## WOOD et al. v. HUBBARD.

#### (Circuit Court of Appeals, Third Circuit. July 9, 1894.)

#### No. 2.

1. SHIPPING—CHARTER PARTY—FREIGHT EARNED—COMMENCEMENT OF VOYAGE.
   On completing loading, a vessel proceeded, pursuant to her charter, in tow of the charterers' tug, down a river in prosecution of her voyage, but became icebound in the river, and so remained several weeks, until the river opened, when, by order of the charterers, she was towed back to the port of loading, and her cargo was discharged. Her crew was not complete at the time of leaving port, but was sufficient while she was being towed down the river, and men to fill the vacancies had been engaged to board her at its mouth. *Held*, that she had commenced the voyage, so as to earn freight, as she had actually left her port of loading with manifest intent to proceed to her port of destination, and the absence of part of her crew had not contributed to the delay.

2. SAME—FRUSTRATION OF VENTURE.
   While the vessel remained icebound, the day by which the charterers had contracted to deliver the cargo to purchasers passed, and the contract was canceled by the purchasers for the delay. No notice of the necessity of delivery by that day had been communicated to the master of the vessel or any one representing her. *Held* that, there having been no breach of any essential stipulation by the vessel, necessarily resulting

in the frustration of the charterers' venture, the vessel was not chargeable with its failure.

**3. SAME—GROSS FREIGHT—EXPENSES OF VESSEL.**

No other charter for the vessel was procurable until after the time within which she would have completed her voyage had she proceeded after the river opened. *Held*, that she was properly allowed the gross freight she would have earned, without deduction for expenses which would have been incurred on the voyage, the expenses of detention being offset against them.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania.

This was a libel by Andrew J. Hubbard, master of the schooner Percy W. Schall, against Richard Wood, George Wood, Walter Wood, and Stuart Wood, trading as R. D. Wood & Co., for freight and damages. The district court rendered a decree for libelant. Respondents appealed.

The following opinion was rendered in the district court, November 10, 1893, on the hearing upon exceptions to the report of the special commissioner in the case:

Butler, District Judge. There are but two exceptions which call for remark,—the libelant's first, that "the commissioner erred in disallowing the claim of $325 for demurrage," and the defendants' sixth, that "the commissioner erred in finding the libelant entitled to full gross freight." Each exception seems to be founded on a misunderstanding of what the commissioner did. In effect, he held the respondent answerable for the time lost by the vessel, while icebound at Millville, and found her to be compensated by the saving of time and expenses resulting from the termination of her voyage there. A reference to pages 21, 22, and 23 of his report shows this. In other words, he found that the time lost by the vessel at Millville, and her consequent expenses and incidental charges during this period, were equal to the time and expenses necessary to complete her voyage to Florida. He therefore allowed her the stipulated freight for the voyage. This is just. In the absence of her detention at Millville, the libelant would have been entitled to the entire freight stipulated for, less so much as she might have saved or made by its termination there. Had she found other employment within the time required to make the voyage contemplated, the value of this employment must have been deducted. If she had not, but remained idle under expenses equal to those she would have incurred on the voyage, there would have been nothing to deduct. This is the common rule applicable to such cases, and was applied in The Gazelle, 128 U. S. 474, 9 Sup. Ct. 139. Here she was idle, necessarily, and the respondent must therefore pay the entire sum stipulated for. He cannot urge that she might and should have been employed, because she was icebound, and thus prevented earning anything, by his conduct. The delay at Millville was the natural result of compelling her to go there. The river had been frozen over for several days, and she was enabled to move only because of a temporary thaw. That she would be frozen in, as she was, after unloading, should have been expected. Receiving the stipulated freight, she cannot, however, claim further compensation for the detention, because she lost no more time thereby than would have been necessary to complete the voyage, for which it was the price.

Possibly it is as well to say a word respecting the libelant's second exception, which relates to the disallowance of his claim founded on the charter for a return cargo. The evidence respecting this claim is too indefinite to justify its allowance. We are not informed when the voyage from Jacksonville was to commence, and cannot, therefore, judge whether it is probable the vessel would have reached that point in time. In view of the obstacles encountered, and delay experienced, in the attempt to get out of the river after loading at Millville, the time occupied in reaching Jacksonville must have exceeded the expectation of the libelant considerably. Nor

are we informed of the probable advantages of that charter, and we cannot, therefore, know that the charter obtained here on March 3, the earliest period at which the vessel could have reached Jacksonville, did not compensate for all the loss incurred on account of the former charter.

N. Bubois Miller & J. Rodman Paul (Biddle & Ward, on the brief), for appellants.

Curtis Tilton and H. R. Edmunds, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and GREEN, District Judge.

GREEN, District Judge. This is an appeal from the district court of the United States for the eastern district of Pennsylvania. The libel, which was to recover freight and damages, was filed by the master of the schooner Percy W. Schall, under the following circumstances: The appellants and respondents below are manufacturers of iron pipe at Millville, in the state of New Jersey. It appears that they had entered into a contract with the firm of Fairbanks, Morse & Co. to manufacture for them, and to deliver at Smyrna, Fla., a large quantity of iron pipe and fittings, which were to be used in the construction of an irrigation scheme in that state. By the terms of the contract the last delivery of these pipes was to be made on or about the 1st day of February, 1893. The greater portion of the pipes was to be delivered during the year 1892, but there still remained a certain quantity undelivered in December of that year; and on or about December 22, 1892, the appellants chartered the schooner Percy W. Schall to convey them to the port of delivery. On the date of the charter the schooner was lying at Philadelphia. Immediately upon the charter being perfected, she left Philadelphia, bound for Millville, N. J., there to take on the cargo of pipes. She arrived at Millville in due time, and the cargo was completely loaded, and the schooner ready to sail, on the 5th day of January, 1893. The rate of the freight was to be $3 per ton of pipe, and the weight of the pipes shipped was 273 634/2240 tons. Upon the completion of the loading of the cargo, and on the 5th day of January, 1893, pursuant to the terms of the charter party, the Schall was taken in tow to Millville by a tug furnished by the appellants, and, in prosecution of her voyage to Florida, proceeded down the Maurice river to a point about five miles below Millville, where she was obliged to come to anchor on account of the ice which impeded her progress; the river below that point being entirely frozen over, and wholly impassable to vessels. The weather became, and remained thereafter, exceedingly cold; and the Schall was frozen up in the Maurice river until the 14th day of February, 1893. On that day, by orders of the appellants, a tug under their control towed the Schall back to Millville. It appears that in the meanwhile, and while the Schall was frozen up in the river, Fairbanks, Morse & Co., the purchasers of the iron pipes, notified the appellants that as the time for delivery had passed, and as the franchise under which they were operating had expired by limitation, they would not receive the pipes, if sent; and thereupon, on the 9th of February, the appellants notified the master of the Schall that he need not proceed

upon the voyage, as the orders for the pipes had been canceled because of this delay in delivery. Upon the arrival of the Schall at Millville, her cargo was discharged, and claim was made upon the appellants for the freight. This claim being ignored, this libel was then filed by the master to recover the full amount of gross freight, certain expenses to which the schooner had been put by the failure to proceed upon the voyage, and for demurrage. A mass of testimony was taken touching these various points, which, being considered by the court below, it awarded the libelant full gross freight and some minor expenses, but disallowed the claim for demurrage, as made. From the decree thereupon made the appellants bring this appeal.

Ten errors are assigned by the appellants, but they need not be separately discussed. It will be better to consider them under one or two general heads. It is insisted by the counsel for the appellants that the court below erred in allowing the libelant any freight, it not having been earned by the libelant, since the voyage had not actually commenced, and the commercial venture in which the freight was to have been earned was frustrated by the delay of the Schall without the fault of the respondents. Second, because the libelant was allowed full gross freight; that, if he was entitled to freight, he was not entitled to full gross freight, without deduction for the expense he would have incurred in earning it. And, incidentally, because the court held the respondents practically liable for all the delay which ensued upon the return of the libelant to Millville, although such delay was caused partly by the act of God, and was not immediately connected with the discharge of the cargo.

We do not think that any of these contentions can be successfully maintained. Certainly, it cannot be asserted as a matter of law that the voyage had not commenced. It cannot be denied that when the Schall left the port of Millville in charge of the tug, to be towed down the Maurice river, the full complement of the crew was not on board. She was short a second mate and one seaman. She had on board a chief mate, steward, two common seamen, and the master. And the allegation is that when the schooner left Millville she was not in a condition ready 'for making her voyage, because her crew was not complete, and that under such circumstances the courts hold it cannot be assumed that the voyage has commenced. While the proposition, broadly stated, is undoubtedly true, we do not see its application to the case under consideration. Under the terms of the charter party the Schall was to be towed down the Maurice river to the Delaware by the tug of the appellants. It cannot be doubted that for the purposes of that part of her voyage the complement of men upon her was sufficient. Besides, it is undisputed that the master had engaged a second mate and another seaman to board the schooner when she arrived at the mouth of the Maurice river. Nowhere in the testimony does it appear that the absence of these two men in any way contributed to the inability of the schooner to pass down the Maurice river on her voyage. It was solely because she became icebound that her further progress

was barred. The failure to have a full complement of her crew on board, passing down the Maurice river, when it is shown that the vacancies were to be filled before the vessel left the river, does not militate against the idea that the voyage had commenced. A ship may be thoroughly seaworthy, so far as her crew is concerned, for a voyage down the river, when she would not be seaworthy for a voyage upon the ocean. The case would have been different had the appellants shown that the delay of the schooner was caused by the absence of these two men,—part of the crew,—but such evidence is wholly wanting.

Nor does the allegation that the voyage had not actually commenced at Millville when the Schall left her berth seem to rest on any solid foundation. It might be asserted with great confidence that the voyage really commenced at Philadelphia, where the Schall was lying when she was chartered; but, without holding that as a matter of law, it is quite clear that the voyage in question did commence when the schooner left the port of Millville to proceed down the river on her way to Florida. At that time the cargo had been duly loaded, bills of lading had been signed and forwarded to the consignees, part of the freight had been paid by the appellants, and everything antecedent to the sailing had been fully done, and then the vessel left the port, bound for Florida. In other words, technically speaking, she "broke ground," and that constituted the commencement of the voyage. In Carver on Carriage by Sea (section 148), it is stated that, where a vessel lying at her port of loading moves from the place where she is lying to another loading berth, the voyage commences as soon as she "breaks ground" to go to that berth. A fortiori, where a vessel actually and in fact leaves her port of loading, with manifest intent to proceed to her port of destination, it is clear that that voyage had begun, both as a matter of fact and a matter of law.

And the contention of the appellants that the appellee should be charged with the frustration of their venture cannot be assented to. The venture was the sending of the iron pipes by the appellants to Florida. It was wholly within their knowledge that these pipes were to be delivered by a day certain. Such knowledge was not communicated in any way, so far as the evidence shows, to the master of the schooner, or to any one representing the schooner. It is clear from the testimony that the progress of the schooner was arrested, not by any fault on the part of the schooner, but by an act of God. It is true that it is the duty of a ship to complete a voyage for which she is chartered within a reasonable time, having due regard to the adventure of the shipper; that is, in such a time that the commercial speculation of the shipper may be successfully carried out. For willful breach of this duty the ship would be liable in damages, if it resulted in a frustration of the venture. But, as stated, there is no evidence tending to show that the master was aware of the terms of the contract between the appellants and Fairbanks, Morse & Co., limiting the time of delivery. The undertaking on the part of the Schall was that the cargo should be delivered in a reasonable time, perils of the sea, etc., excepted. The primary

cause, as appears from the testimony, of the frustration of the venture, may be found in the delay of the appellants in chartering a vessel to convey their pipes to Florida. Considerable correspondence had passed between the appellants and their consignees as to the delivery of the pipes. Originally, the contract which had been entered into on July 23, 1892, was to be completed by December 15, 1892. At the request of the appellants this time was afterwards extended to February 1, 1893. But no notice of the necessity of a delivery on or before that day was ever communicated to the master of the Schall, and it was not until the 9th day of February, 1893, that he first became aware of the fact that the consignees had declined to receive the cargo, and had canceled the contract because of the delay. Had the appellants sought an earlier charter, in all probability, they would have fulfilled their contract in ample time. Delaying the charter until the middle of winter, when they must have known that the liability to have navigation impeded, if not wholly closed, by the effect of intense cold, was a fault on their part, and not on the part of the schooner, which they actually did charter. They must have known that the time for delivery of their pipe was growing very short, and when they chartered and loaded the Schall they must have assumed the risk of interference by severe weather. If, under these circumstances, they have suffered loss, they cannot now cast the blame upon the innocent schooner. There are no facts whatever in the case which would justify the court in holding the Schall liable for the failure of this commercial adventure. The inquiry in such a case is whether there has been a breach of an essential stipulation by the ship, necessarily resulting in a frustration of the object which the charterer had in view when he chartered the ship. Such inquiry in this case must be answered in the negative.

But the appellants further insist that the court below erred in allowing gross freight, without deduction for such expenses as she would have incurred had she made her trip. The court, in considering the report of the special commissioner in this case, used this language:

"In effect, he holds the respondents answerable for the time lost by the vessel while icebound at Millville, and found her to be compensated by the saving of time and expenses resulting from the termination of her voyage there. In other words, he found that the 'time lost by the vessel at Millville, and her consequent expenses and incidental charges during this period, were equal to the time and expenses necessary to complete her voyage to Florida, and he therefore allowed her the stipulated freight for the voyage. This is just. In the absence of her detention at Millville, the libelant would have been entitled to the entire freight stipulated for, less so much as she might have saved or made by its termination there. Had she found other employment within the time required to make the voyage contemplated, the value of this employment must have been deducted. If she had not to remain idle under expenses equal to those she would have incurred on the voyage, there would have been nothing to deduct. This is the common rule applicable to such cases, and is laid down clearly in the case of The Gazelle, 128 U. S. 474, 9 Sup. Ct. 139."

We fully concur in these remarks of the learned court below. The evidence shows that the voyage was broken up by the act of the ap-

pellants on the 14th of February. On that day the Maurice river was open, and the Schall could have gone to sea, but her cargo had been unloaded on the wharf at Millville by the express orders of the appellants. Although diligent efforts were made by the master of the Schall to procure another charter, none was procurable until the 3d of March following. During all that time of enforced idleness, directly arising from the breaking up of her voyage by the act of the appellants, she had her crew on board, and was put to all the other necessary expenses which she would have incurred had she made her voyage. None of these expenses were allowed in the court below as a liquidated amount, but they were offset against the expenses which she would have incurred had she made her voyage, which, under the evidence, it seems would have been completed, under usual circumstances, long before the 3d of March. As the court below said, then it was exactly just to set the one claim off against the other. The ship was idle as a necessary consequence of the act of the appellants. They cannot urge that she ought to have been employed before she was. It was the result of their fault that the vessel became icebound, and unable to earn anything. The delay at Millville was the consequence of her going to that point. Her detention there ought to have been anticipated by the appellants, for the evidence shows that the river had been frozen over solidly just previous to their ordering the Schall to Millville; and it was only by reason of a temporary thaw that she was able to reach that port at any rate. But, having had awarded to her the gross freight which she would have earned, of course she ought not to be awarded the expenses of the detention, because she lost by that detention in the Maurice river no more time than she would have lost had she made her contemplated voyage to Florida.

We do not think it necessary to consider the other minor points that are raised in the case. The answers to the contentions of the appellants could not be stated more clearly than in the finding of the commissioner, and in the opinion of the court sustaining his conclusions; and, adopting them as the views of this court, the result is, the judgment below is affirmed.